UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
NORTHERN DIVISION

DEBORAH BANKS,                          )
                                        )
              Plaintiff,                )
                                        )
       v.                               )     No.  2:15 CV 53 JMB
                                        )
CAROLYN W. COLVIN,                      )
Acting Commissioner of Social Security, )
                                        )
              Defendant.                )

## MEMORANDUM AND ORDER

This action is before the Court, pursuant to the Social Security Act ("the Act"), 42 U.S.C.

§§ 401, *et seq*.  The Act authorizes judicial review of the final decision of the Commissioner of

Social Security (the "Commissioner") denying Plaintiff Deborah Banks' applications for

Supplemental Security Income and Disability Insurance Benefits.  All matters are pending before

the undersigned United States Magistrate Judge with consent of the parties, pursuant to 28

U.S.C. § 636(c).  The matter is fully briefed, and for the reasons discussed below, the

Commissioner's decision will be reversed and remanded.

### Procedural History & Summary of Memorandum Decision

In April 2012, Plaintiff filed applications for Supplemental Security Income ("SSI") and

Disability Insurance Benefits ("DIB").  Plaintiff alleged a disability onset date of August 1,

2011.  (Tr. 157, 167)[1]  Plaintiff's claims were initially denied on July 24, 2012.  (Tr. 20)

Plaintiff thereafter requested a hearing before an Administrative Law Judge ("ALJ"), which was

held on October 23, 2013.  Plaintiff and Denise Waddell, a Vocational Expert ("VE"), testified at

the hearing.  On November 21, 2013, the ALJ issued a decision in which he concluded that

---

[1] "Tr." refers to the administrative record filed on behalf of the Commissioner.

Plaintiff was not disabled under the Act. (Tr. 20-30) The Social Security Administration

Appeals Council denied Plaintiff's request for review, leaving the ALJ's decision as the final

decision of the Commissioner in this matter. (Tr. 1-3) Plaintiff filed the instant action on July

20, 2015. (ECF No. 1) Accordingly, Plaintiff has exhausted her administrative remedies and the

matter is properly before this Court. Plaintiff has been represented throughout all relevant

proceedings.

Although the ultimate issue before the Court is whether substantial evidence supports the

Commissioner's decision, the parties present two specific issues for this Court's review: (1)

whether, at step two, Plaintiff demonstrated that she had a medically determinable mental

impairment—depression and anxiety; and (2) whether the ALJ properly considered the opinion

evidence in crafting Plaintiff's residual functional capacity ("RFC").

After a thorough review of the record, the Court concludes that the Commissioner's

decision is not supported by substantial evidence because the ALJ's decision did not fully

address the relevant medical evidence supporting Plaintiff's diagnoses of depression and anxiety.

Therefore, the decision must be reversed and the matter remanded for further proceedings.

**Administrative Record**[2]

I.     **General**

At the time of her hearing, Plaintiff was a 54 year-old woman. In her Disability Report –

Adult form, Plaintiff listed the following conditions that impaired her ability to work: (1)

"rheumatoid arthritis fibromyalgia depression"; (2) rheumatoid arthritis; (3) fibromyalgia; (4)

depression/anxiety; (5) high blood pressure; (6) high cholesterol; (7) high triglycerides; and (8)

acid reflux. (Tr. 192) Plaintiff represented that she stopped working in June 2009 because she

---

[2] The undersigned has reviewed and considered the entire administrative record. Only
those portions of the record that are most pertinent to the Court's decision are specifically
summarized and discussed herein.

was laid off. (Tr. 193) Plaintiff reported that she was taking, among other medicine, Lorazepam for anxiety and Prozac for depression/anxiety. (Tr. 194)

Plaintiff also completed a Function Report – Adult form. In that report, Plaintiff described her daily activities and the difficulties she experiences as a result of her various medical conditions. Plaintiff indicated that she had no issues handling her finances, and did not need reminders to attend to her other affairs. (Tr. 202-03) Plaintiff indicated that her health problems affected her ability to: lift, squat, bend, stand, walk, sit, kneel, climb stairs, and use her hands. (Tr. 204) Plaintiff indicated no impact on her abilities associated with: reaching, talking, hearing, seeing, memory, completing tasks, concentration, understanding, following instructions, and getting along with others. (Id.) Plaintiff indicated that her attention span was "OK," that she had no problems with written or spoken instructions, and that she had no problems with authority figures. (Tr. 204-05) Plaintiff also reported that stress makes her hurt worse, that she did not like change but could handle it, and that she would sometimes get anxious or experience panic attacks and did not like going places alone. (Tr. 205)

## II.   Medical

Plaintiff's primary care physician was Dr. Betty Noll, M.D. Dr. Noll treated Plaintiff numerous times between at least 2008 and 2012. (Tr. 315-29, 507-08) Dr. Noll's treatment notes indicate that she saw Plaintiff relative to a variety of ailments, including but not limited to, hypertension, cholesterol/triglyceride levels, gastroesophageal reflux ("GERD"), muscle and joint pain (e.g., rheumatic issues and fibromyalgia), and women's wellness issues. Dr. Noll's notes also indicate that she referred Plaintiff to Ms. Deanna Davenport, a Nurse Practitioner, relative to Plaintiff's rheumatic/fibromyalgia problems.[3]

---

[3] Ms. Davenport's treatment notes are discussed separately below. Dr. Noll's notes suggest that she relied, at least in part, on Ms. Davenport to treat Plaintiff in this regard. For

Dr. Noll's notes also indicate that she treated Plaintiff relative to depression and anxiety issues on numerous occasions. The record is not entirely clear when Plaintiff's depression first emerged as a treatment concern for Dr. Noll. The earliest treatment notes in the administrative record in this regard are from December 2008. (Tr. 324) Those notes suggest that Dr. Noll had had previously prescribed Celexa for Plaintiff's depression and the possibility of using different drugs, if necessary, in the future. Later notes indicate that depression and anxiety concerns prompted further attention from Dr. Noll. For example, in January 2010, Dr. Noll prescribed Prozac to address Plaintiff's anxiety and depression. (Tr. 323) Dr. Noll's February 2011 treatment notes likewise indicate a history of depression. In January 2012, after Plaintiff complained of feeling depressed and anxious, Dr. Noll prescribed Prozac and considered adding Cymbalta. (Tr. 319)

Plaintiff also received treatment at a University of Missouri Rheumatology Clinic during 2012 and 2013. (Tr. 248-64, 339-53) The administrative record indicates that Nurse Practitioner Deanna Davenport, APRN, FNP, saw Plaintiff at this Clinic numerous times relative to her muscle and joint pain, on referral from Dr. Noll. The first record is from Plaintiff's consultation with Ms. Davenport in February 2012. Those treatment notes indicate Plaintiff had muscle and joint pain, and a medical history of depression and anxiety. Plaintiff reported depression from financial concerns and dealing with her pain. Plaintiff was unable to tolerate Cymbalta and was on a minor dose of Fluoxetine for her depression and anxiety. Ms. Davenport's notes reflect a diagnosis of fibromyalgia syndrome ("FMS"). (Tr. 251) Ms. Davenport's notes from follow-up treatment in March 2012 indicate issues of FMS and rheumatoid arthritis ("RA"), noting, "often see FMS accompany RA, though … hard to say which came first." (Tr. 255) Ms. Davenport

___

example, treatment notes dated November 5, 2012, state that "[Plaintiff] is being seen by rheumatology every 3 months. Currently on Savella and Plaquenil. She is not sure if they are beneficial, but I believe Deanna Davenport is following her regularly for that." (Tr. 316)

was also concerned regarding the lack of treatment for Plaintiff's depression and noted her poor reactions to antidepressants. (Id.)

Ms. Davenport's notes from May 2012 indicate that Plaintiff's fibromyalgia was active and aggravated by anxiety/depression, and further document Plaintiff's problems tolerating many antidepressants. Plaintiff was started on the antidepressant Paroxetine. (Tr. 339-41) Ms. Davenport's notes from August 2012 state that fibromyalgia is "[m]uch more the cause of daily [symptoms], I'm sure. Currently on SAvella [sic] … with mild possible improvement." (Tr. 347) Ms. Davenport further noted that the severity of Plaintiff's depression "seems improved with SAvella [sic]" and again refers to Plaintiff's problems tolerating traditional depression medications based on selective serotonin reuptake inhibitors ("SSRIs"). (Id.) Ms. Davenport noted that Savella is approved for the treatment of fibromyalgia in the United States, and for depression in Europe. (Id.) Ms. Davenport's notes from November 2012 indicate that Plaintiff was experiencing "some depression" and that Plaintiff was continued on Savella. (Tr. 350-53)

Plaintiff also received treatment at various times, and for various reasons, at University Hospital – University of Missouri Health System. (Tr. 354-505) The hospital records include extensive documents concerning a hysterectomy performed in early 2013. Most of the records reflect the treatment provider's impression that Plaintiff exhibited normal psychiatric functioning (see, e.g., Tr. 373, 391, 406, 437, 442, 457, 471), but not always. In April 2013, during a follow-up visit following her surgery, Plaintiff complained of "mood swings" and the physician's notes indicate "anxiety, no depression" and Plaintiff was advised to see her primary care physician. That note further indicates that Plaintiff "has been through a lot and would not consider [the mood swings] to be abnormal." (Tr. 496-500)

Plaintiff was also treated at least twice at the Pershing Memorial Hospital emergency room, including for dizziness and shortness of breath. Each time the records indicate Plaintiff's

mental status as normal.  (Tr. 293-313)

### III.     <u>Opinion Evidence</u>

The administrative record includes opinions from three different sources:  Nurse

Practitioner Davenport; Dr. Margaret Burke, M.D.; and Dr. Charles Watson, Psy.D.

Ms. Davenport submitted a "Medical Statement Regarding Inflammatory Arthritis for

Social Security Disability Claim," dated November 10, 2012.[4]  (Tr. 337-38)  In addition to

providing information concerning the limitations associated with Plaintiff's muscle and joint

pain, Ms. Davenport also reported significant malaise.  Ms. Davenport opined that Plaintiff

experienced mild limitations in her activities of daily living, moderate limitations in her ability to

maintain social functioning, and moderate limitations regarding her concentration, persistence or

pace.  Ms. Davenport concluded that Plaintiff has experienced a marked increase in joint pain

and that "[w]e do not have her condition well controlled yet."  (Tr. 338)

Dr. Burke, a state agency consultant, submitted a "Physical Functional Capacity

Assessment," dated October 24, 2012.  (Tr. 286-92)  Dr. Burke's opinion focused primarily upon

Plaintiff's exertional and other physical limitations.  In general, Dr. Burke did not find Plaintiff

to have many significant limitations.  Dr. Burke did not provide an opinion regarding Plaintiff's

depression or anxiety.[5]

The administrative record also includes a "Disability Determination Explanation."  (Tr.

78-85)  This record includes opinions from two sources, Dr. Watson completed a psychiatric

review technique ("PRT"), and Susan Wayne, a disability examiner, completed a physical

residual functional capacity assessment.  Only Dr. Watson's opinion is discussed herein.

---

[4] The date is handwritten and appears to have been changed.  It may be that the date is November 16, 2012.  Any difference is of no significance to the decision in this matter.

[5] Because Dr. Burke's opinion is not critical to the undersigned's conclusion that this case must be remanded, that opinion is not summarized or analyzed in detail.

Dr. Watson noted that Plaintiff had one or more medically determinable impairments, and listed Plaintiff's affective disorders as "secondary" in priority, and non-severe. (Tr. 81) Regarding anxiety related disorders, Dr. Watson indicated "[a] medically determinable impairment is present that does not precisely satisfy the diagnostic criteria above." (Id.) Dr. Watson noted that Plaintiff had been seen at an emergency room in the past nine months for a panic attack. Dr. Watson concluded that Plaintiff had mild limitations/restrictions in each of the following areas: (1) activities of daily living; (2) maintaining social functioning; and (3) concentration persistence or pace. Plaintiff had no episodes of decompensation. Dr. Watson further opined that Plaintiff did not meet any related Listing.

## IV.   Administrative Hearing

On October 23, 2014, the ALJ conducted a hearing on Plaintiff's application. (Tr. 37-69) Plaintiff, who appeared with counsel, testified in response to questions posed by the ALJ and counsel. Plaintiff was 54 years old at the time of the hearing. Among other things, Plaintiff testified that she completed the twelfth grade, is able to drive, and can handle her own money. Plaintiff described her activities of daily living. Plaintiff also testified about the limitations she experienced relative to her physical ailments, including arthritis and fibromyalgia. Plaintiff reported a history of depression and that she has problems tolerating antidepressants. Plaintiff acknowledged that she has not seen a mental health professional. Regarding anxiety, Plaintiff indicated that she had been prescribed an anti-anxiety medication, but she only takes it when she becomes overwhelmed. Plaintiff further testified that she experienced problems with her ability to concentrate and remember things. Plaintiff reported that she previously worked as an administrative assistant, and last worked in 2009.

At the hearing, Plaintiff's counsel advised the ALJ that she was asserting that Plaintiff met Listing 14.09, due to her arthritis. Counsel provided specific citations to the record in

support of her assertion.  Plaintiff did not identify any other Listing that she met.

Vocational Expert ("VE") Denise Waddell also testified at the hearing.  The ALJ posed several hypothetical questions to the VE.  The first question involved a hypothetical person who had limitations that were largely consistent with the residual functional capacity the ALJ later ascribed to Plaintiff.  The VE identified several representative jobs that such a hypothetical person could perform, including receptionist, appointment clerk, router, mail clerk, and price marker.  The ALJ's second hypothetical added a mental limitation "with regard to memory, that they would be unable to sustain an eight-hour workday/40-hour workweek on an ongoing consistent basis."  (Tr. 65)  The VE opined that such a hypothetical claimant would be unemployable.  For a third hypothetical, the ALJ modified the first hypothetical claimant to add "frequent handling bilaterally."  (Tr. 66)  The VE opined that such a person would remain employable in the same manner as the first hypothetical individual.

## V.     ALJ's Decision

In assessing whether Plaintiff was disabled, the ALJ followed the required five-step process laid out in the Commissioner's regulations.  At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity after her alleged onset of disability—August 1, 2011. (Tr. 22)  At step two, the ALJ found that Plaintiff had the following severe impairments: "Rheumatoid Arthritis, Fibromyalgia, obesity, and degenerative arthritis of the knees bilaterally." (Id.)  The ALJ also found that Plaintiff had the following non-severe impairments:  high cholesterol; acid reflux; and high blood pressure.  (Tr. 22-23)  The ALJ found these impairments to be non-severe because they were controlled by medications and did not cause more than a minimal impact on Plaintiff's ability to perform basic work activities.  (Id.)

Also at step two, the ALJ specifically concluded that, although Plaintiff alleged symptoms of depression and anxiety, these conditions did not rise to the level of a medically

determinable mental health impairment. (Tr. 23) The ALJ's conclusion in this regard relied on several factors. First, Plaintiff did not seek help from a mental health professional. (Id.) Second, although Plaintiff had been prescribed Xanax for her an anxiety, she failed to take it on a regular basis. (Id.) Third, Plaintiff's testimony that she experienced problems with concentration and memory was inconsistent with her ability to read, handle finances, and work on crossword puzzles. (Id.) Fourth, although Dr. Watson found Plaintiff to have medically determinable mental health impairments, his conclusion was based on the diagnoses of Dr. Noll, Plaintiff's primary care physician. The ALJ concluded that, because Dr. Noll and Nurse Practitioner Davenport were not "mental health professionals" and their treatment was based on Plaintiff's self-reports, those opinions were insufficient to support a medically determinable mental health impairment. (Id.)

At step three, the ALJ found that none of Plaintiff's impairments, alone or in combination, meets or equals a listed impairment. The ALJ expressly considered and rejected Plaintiff's contention that she met Listing 14.09 due to her fibromyalgia and inflammatory arthritis. (Tr. 23-24)[6]

At step four, the ALJ concluded that Plaintiff had the RFC to –

> perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) in that she can lift and carry up to 20 pounds occasionally and 10 pounds frequently, although she can only stand/walk four out of eight hours and sit four out of eight hours. She would need a sit/stand option that would not materially adversely affect her ability to do the job. She has unlimited ability to push and pull with her extremities. However, [she] is unable to kneel, crouch, or crawl but can occasionally climb, stoop, and balance on uneven surfaces. As a result of loss of memory and side effects of medications, [she] is limited to semi-skilled work of SVP 4 or less.

(Tr. 25) In making his RFC determination, the ALJ also made an adverse determination

---

[6] In her brief to this Court, Plaintiff does not contend that the ALJ erred in this regard at step three.

regarding Plaintiff's credibility. In particular, the ALJ concluded that Plaintiff's "statements concerning the intensity, persistence and limiting effects of [her] symptoms [were] not entirely credible …." (Tr. 26)

In assessing Plaintiff's RFC, the ALJ did not address the opinions of psychological consultant Charles Watson, Psy.D. Although the ALJ discussed the opinions of Nurse Practitioner Davenport (Tr. 27), he did not explain what weight, if any, he assigned to those opinions.[7] The ALJ assigned "some weight" to the opinion of Dr. Burke, but the ALJ imposed greater restrictions than suggested by that opinion. In particular, the ALJ concluded that Plaintiff's ability to stoop, kneel and crouch was more limited than Dr. Burke opined, and that Plaintiff's need to alternate between sitting and standing was credible. (Tr. 28)

As a result of his RFC determination, the ALJ concluded that Plaintiff could not perform the duties of her past relevant work. (Tr. 29)

At step five, the ALJ relied on the VE's testimony to support a conclusion that there existed sufficient jobs in the national economy that Plaintiff could still perform, such as receptionist, appointment clerk, router, mail clerk, and price marker. (Tr. 30) Accordingly, the ALJ concluded that Plaintiff was not disabled under the Act. (Id.)

## Analysis

### I. Issues Presented for Review

Plaintiff contends that the ALJ erred in two ways that require remand. First, Plaintiff contends that the ALJ erred at step two in concluding that Plaintiff did not have the medically determinable impairments of depression and anxiety. Second, Plaintiff suggests that the ALJ erred at step four in allegedly rejecting the opinion of Nurse Practitioner Davenport. Because the

---

[7] At step two, the ALJ briefly addressed and rejected Dr. Watson's opinion that Plaintiff had medically determinable mental health impairments, and at step three the ALJ noted that nurse practitioners such as Ms. Davenport are not acceptable medical sources. (Tr. 23, 24)

undersigned concludes that the matter must be remanded in view of Plaintiff's first issue, the second issue will not be addressed herein.

## II.      **Standard of Review and Analytical Framework**

To be eligible for SSI and DIB benefits, a claimant must prove that she is disabled within the meaning of the Act.  See Baker v. Sec'y of Health and Human Servs., 955 F.2d 552, 555 (8th Cir. 1992); Pearsall v. Massanari, 274 F.3d 1211, 1217 (8th Cir. 2001).  Under the Act, a disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. §§ 423(d)(1)(A) and 1382c (a)(3)(A).  A claimant will be found to have a disability "only if [her] physical or mental impairment or impairments are of such severity that [she] is not only unable to do [her] previous work but cannot, considering [her] age, education and work experience, engage in any other kind of substantial gainful work which exists in the national economy."  42 U.S.C. § 423(d)(2)(A) and 1382c(a)(3)(B).  See also Bowen v. Yuckert, 482 U.S. 137, 140 (1987).

Per regulations promulgated by the Commissioner, the ALJ follows a five-step process in determining whether a claimant is disabled.  "During this process the ALJ must determine:  '1) whether the claimant is currently employed; 2) whether the claimant is severely impaired; 3) whether the impairment is, or is comparable to, a listed impairment; 4) whether the claimant can perform past relevant work; and if not 5) whether the claimant can perform any other kind of work.'"  Andrews v. Colvin, 791 F.3d 923, 928 (8th Cir. 2015) (quoting Hacker v. Barnhart, 459 F.3d 934, 936 (8th Cir. 2006)).  "If, at any point in the five-step process the claimant fails to meet the criteria, the claimant is determined not to be disabled and the process ends."  Id. (citing Goff v. Barnhart, 421 F.3d 785, 790 (8th Cir. 2005)).  See also Martise v. Astrue, 641 F.3d 909,

921 (8th Cir. 2011).

The Eighth Circuit has repeatedly emphasized that a district court's review of an ALJ's disability determination is intended to be narrow and that courts should "defer heavily to the findings and conclusions of the Social Security Administration." Hurd v. Astrue, 621 F.3d 734, 738 (8th Cir. 2010) (quoting Howard v. Massanari, 255 F.3d 577, 581 (8th Cir. 2001)). The ALJ's findings should be affirmed if they are supported by "substantial evidence" on the record as a whole. See Finch v. Astrue, 547 F.3d 933, 935 (8th Cir. 2008). Substantial evidence is "less than a preponderance, but enough that a reasonable mind might accept it as adequate to support a decision." Juszczyk v. Astrue, 542 F.3d 626, 631 (8th Cir. 2008); see also Wildman v. Astrue, 964 F.3d 959, 965 (8th Cir. 2010) (same).

Despite this deferential stance, a district court's review must be "more than an examination of the record for the existence of substantial evidence in support of the Commissioner's decision." Beckley v. Apfel, 152 F.3d 1056, 1059 (8th Cir. 1998). The district court must "also take into account whatever in the record fairly detracts from that decision." Id. Specifically, in reviewing the Commissioner's decision, a district court is required to examine the entire administrative record and consider:

1.  The credibility findings made by the ALJ.
2.  The claimant's vocational factors.
3.  The medical evidence from treating and consulting physicians.
4.  The claimant's subjective complaints relating to exertional and non-exertional activities and impairments.
5.  Any corroboration by third parties of the claimant's impairments.
6.  The testimony of vocational experts, when required, which is based upon a proper hypothetical question which sets forth the claimant's impairment.

Stewart v. Sec'y of Health & Human Servs., 957 F.2d 581, 585-86 (8th Cir. 1992) (citation omitted).

Finally, a reviewing court should not disturb the ALJ's decision unless it falls outside the

available "zone of choice" defined by the evidence of record. <u>Buckner v. Astrue</u>, 646 F.3d 549, 556 (8th Cir. 2011). A decision does not fall outside that zone simply because the reviewing court might have reached a different conclusion had it been the finder of fact in the first instance. <u>Id</u>.; <u>see</u> <u>also</u> <u>Chaney v. Colvin</u>, 812 F.3d 672, 676 (8th Cir. 2016); <u>McNamara v. Astrue</u>, 590 F.3d 607, 610 (8th Cir. 2010) (explaining that if substantial evidence supports the Commissioner's decision, the court "may not reverse, even if inconsistent conclusions may be drawn from the evidence, and [the court] may have reached a different outcome").

**III.     <u>Did the ALJ Err in Considering Plaintiff's Alleged Mental Health Impairments?</u>**

At step two of the sequential disability evaluation process, an ALJ is required to assess a claimant's medically determinable impairments and determine which of those impairments are "severe." <u>See</u> 20 C.F.R. § 404.1520(c). Plaintiff contends that she presented sufficient evidence to show that her anxiety and depression were not only medically determinable impairments, they were also severe impairments. The undersigned agrees in part—substantial evidence does not support the ALJ's conclusion that Plaintiff's depression and anxiety were not medically determinable impairments. On remand, the ALJ can consider whether these impairments meet the severity requirement.

The parties both note that, a medically determinable impairment "must be established by medical evidence consisting of signs, symptoms, and laboratory findings." (Plaintiff's Brief at 6; Commissioner's Brief at 6)[8]   Unsurprisingly, however, they offer differing opinions as to what the record shows in this regard. The ALJ did not expressly or exclusively rely on a lack of

_____

[8] The Commissioner elaborated further on the regulations at issue, further noting that "Medical signs and laboratory findings, established by medically acceptable clinical or laboratory diagnostic techniques, must show the existence of a medical impairment(s) which results from … psychological abnormalities and which could reasonably be expected to produce the pain or other symptoms alleged." (Commissioner's Brief at 6-7, quoting 20 C.F.R. §§ 404.1529(b) and 416.929(b))

"signs, symptoms, and laboratory findings" in rejecting Plaintiff's alleged depression and anxiety. The ALJ noted that Plaintiff's health care providers prescribed medications for her depression and anxiety. The ALJ concluded, however, that Plaintiff did not take her anxiety medications regularly and her activities of daily living undercut her testimony that she had issues with concentration and memory. (Tr. 23) The ALJ also stressed that Plaintiff's diagnosis came from her primary care physician, Dr. Noll, who relied on Plaintiff's own reports which were not corroborated by a mental health professional. (Id.) Furthermore, although Dr. Watson was a mental health professional who concluded that Plaintiff suffered from a medically determinable mental health condition, the ALJ rejected that conclusion because it was based on Dr. Noll's diagnosis. Similarly, the ALJ rejected Nurse Practitioner Davenport's treatment records in this regard because her diagnoses also relied on Dr. Noll's prior diagnosis. (Id.)

Although the record regarding Plaintiff's depression and anxiety is certainly less voluminous than the evidence regarding her other, acknowledged impairments, substantial evidence does not support the ALJ's conclusion that those conditions did not constitute medically determinable impairments. The undersigned believes that this error results primarily from a mistaken conclusion that Plaintiff's various mental health diagnoses and treatments originated from her self-reporting to Dr. Noll, and from not considering the interplay of fibromyalgia syndrome and depression/anxiety symptoms.

As an initial matter, there can be no dispute that the record indicates that Plaintiff has a long-standing history of mental health treatment from her primary care physician, Dr. Noll. The earliest notes in the administrative record are from 2008—well before Plaintiff's alleged onset date. Those notes show Dr. Noll was already treating Plaintiff for depression in 2008. The

record does not indicate, however, when and how Plaintiff was first diagnosed with depression.[9]

Thus, the record does not necessarily support the conclusion that the origin of Plaintiff's

diagnoses of anxiety and depression rest on her self-reporting alone.

Likewise, substantial evidence does not support the ALJ's suggestion that Nurse

Practitioner Davenport's treatment rests entirely on Dr. Noll's diagnoses. The record indicates

that Plaintiff routinely saw Ms. Davenport in 2012 and 2013. Ms. Davenport's notes reflect that

she did not base her treatment solely on Dr. Noll's prior diagnosis. For example, the February

2012 treatment notes indicate that Plaintiff had depression and stress over finances and dealing

with her pain, and noted that Plaintiff was not tolerating her current medication for her

symptoms. (Tr. 251) In other notes, Ms. Davenport concluded that Plaintiff suffered from

fibromyalgia syndrome ("FMS"). (Tr. 251, 255) Ms. Davenport's notes also reflect her concern

that Plaintiff's mental health problems and FMS were interrelated. (Tr. 339-41, 345-53) Ms.

Davenport altered and monitored Plaintiff's mental health medications. In fact, at one point, Ms.

Davenport was treating Plaintiff's fibromyalgia and depression simultaneously with Savella

because of Plaintiff's history of tolerance issues with traditional anti-depression medications

such as SSRIs.[10]

Finally, and significantly, as Plaintiff points out, the Commissioner's own regulations

---

[9] Regarding depression, Dr. Noll's notes state, Plaintiff "weaned herself off Celexa, things she is doing well from that standpoint. I've talked to her that if it is an issue again we can use some Paxil or Prozac ….." (Tr. 324)

[10] Ms. Davenport's notes from August 2012 indicate that Plaintiff's fibromyalgia and depression symptoms both improved on Savella, and that Savella is approved in Europe for treating depression but not in the United States. (Tr. 347) In her November 2012 notes, under the topic of fibromyalgia, Ms. Davenport listed "some depression."
    Fibromyalgia Syndrome includes symptoms of short term memory loss, mood changes, depression, anxiety and difficulty concentrating. See American Academy of Orthopaedic Surgeons, Ortho Info, Fibromyalgia Syndrome, located at http://orthoinfo.aaos.org/topic.cfm?topic=A00199, August 10, 2016.

acknowledge that fibromyalgia is often accompanied by, among other co-occurring conditions, "cognitive or memory problems, … depression, [and] anxiety disorder …." SSR 12-2p, 2012 WL 3104869. The ALJ did not consider this interrelationship between fibromyalgia, depression and anxiety.

This is not a situation in which the ALJ found the impairment to be medically determinable, but failed to clearly articulate whether it was severe or non-severe. Nor is this a situation in which the error can be dismissed as harmless. There is no doubt that the ALJ found Plaintiff's depression and anxiety to be non-impairments at step two. This conclusion has, at least potentially, cascading implications at steps two through five. "When a claimant has multiple impairments, 'the Social Security Act requires the Commissioner to consider the combined effect of all impairments without regard to whether any such impairment, if considered separately could be of sufficient medical severity to be disabling.'" Gann v. Colvin, 92 F. Supp.3d 857, 881 (N.D. Iowa 2015) (quoting Cunningham v. Apfel, 222 F.3d 496, 501 (8th Cir. 2000)). See also Hoffman v. Colvin, 2013 WL 1164809 at *5 (W.D. Ark. March 20, 2013) (citing 20 C.F.R. §§ 404.1523, 416.923; 42 U.S.C. § 423(d)(2)(B)).

The undersigned concludes that substantial evidence does not support the ALJ's conclusion that Plaintiff did not have the medically determinable impairments of depression and anxiety. Therefore, the matter should be remanded so that Plaintiff's depression and anxiety can be taken into account at step two of the sequential analysis; can be properly considered at step three; and can be addressed, as appropriate, at step four in determining Plaintiff's credibility and RFC. In view of this conclusion, the undersigned cannot not fully address Plaintiff's second argument that the ALJ failed to adequately address the opinion of Nurse Practitioner Davenport.

Accordingly,

**IT IS HEARBY ORDERED** that, the decision of the Commissioner is **REVERSED**,

and this cause is **REMANDED** to the Commissioner for further proceedings consistent with this

Memorandum and Order.

      A separate Judgment shall be entered this day.

                          /s/ ***John M. Bodenhausen***
                          JOHN M. BODENHAUSEN
                          United States Magistrate Judge

Dated this  18th   day of  August  , 2016.